1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9    L.M.W., individually, and as the biological          No. CV-22-00777-PHX-JAT
     father and on behalf of L.W., a minor,

10                                                          **ORDER**
                    Plaintiff,

11   v.

12   State of Arizona, et al.,

13                  Defendants.

14

15          Pending before the Court are the following motions: (1) Motion for Summary

16   Judgment filed by Defendants James Tyus and Sonya Tyus (collectively, "the Tyus

17   Defendants"), (Doc. 162), (2) Motion for Summary Judgment filed by the State of Arizona

18   and Department of Child Safety ("DCS") Defendants (collectively, the "State

19   Defendants"),[1] (Doc. 175), and (3) Motion for Partial Summary Judgment Against State

20   Defendants filed by Plaintiffs L.M.W. and L.W. (collectively, "Plaintiffs"), (Doc. 176).

21   The motions are fully briefed. (Docs. 167, 171, 181, 182, 183, 184). The Court now rules

22   on the State Defendants' motion for summary judgment and Plaintiffs' motion for partial

23   summary judgment.

24   //

25

26   ---
     [1] The Complaint makes a distinction between the State of Arizona and the DCS Defendants.
27   (*See* Doc. 1-3; Doc. 115-1). Both the State and the DCS Defendants are represented by the
     same counsel and have moved for summary judgment together. As such, the Court
28   distinguishes between these Defendants only where necessary to accurately portray
     Plaintiffs' claims, the parties' arguments, and/or the relevant facts. However, where not
     otherwise specified, the Court treats the two groups as one—the "State Defendants."

## I.     BACKGROUND

### A.  General Facts

This case arises out of L.W.'s placement in the Tyus Defendants' custody following removal from the custody of Plaintiff L.M.W., L.W.'s biological father. (*See generally* Doc. 115-1). Plaintiffs L.M.W. and L.W. (through L.M.W.) assert claims against two sets of Defendants: (1) Sonya and James Tyus, the married couple who took foster custody of L.W., and (2) various DCS employees, their spouses, and the State of Arizona.[2] The Court recites the facts relevant to each set of Defendants in its discussion of each respective Defendant set's motion for summary judgment below.

### B.  Claims from the Complaint

Plaintiff L.M.W. brings the following claim against the Tyus Defendants on behalf of L.W.: claim of willful and wanton conduct/negligence arising generally out of the Tyus Defendants' failure to prevent the abuse that Plaintiffs allege L.W. suffered. (Doc. 1-3 at 11). Plaintiff L.M.W. also brought the following claim against the Tyus Defendants on behalf of himself and L.W.: 42 U.S.C. § 1983 ("§ 1983") *Monell* claim arising generally out of the Tyus Defendants' alleged failure to take precautions and investigate disclosures of abuse. (*Id.* at 14–16). The § 1983 claim was dismissed without prejudice in this Court's order dated November 18, 2022. (Doc. 34). Plaintiffs and the Tyus Defendants have notified the Court of their intent to settle these claims, pending "the completion of conservatorship proceedings and necessary state court approval of the settlement on behalf of the minor, L.W. (Doc. 188 at 2). As such, the Court does not address the merits of Plaintiffs' claims against the Tyus Defendants and/or the Tyus Defendants' motion for summary judgment in this Order.

Plaintiff L.M.W. brings the following claim against the State of Arizona and the DCS Defendants on behalf of L.W.: gross negligence claim arising generally out of (1) placing L.W. in a foster home in which Plaintiffs allege the State Defendants had reason to

---

[2] Plaintiffs also brought suit against the foster placement company, A New Leaf; however, Defendant A New Leaf has settled. (*See* Doc. 152). Additionally, as noted below, the Tyus Defendants have since begun the process of settling. (*See* Doc. 188).

know that L.W. would be abused, (2) failing to identify and evaluate L.W.'s paternal aunt and uncle as foster parents, and (3) failing to timely investigate L.W.'s disclosures of abuse. (Doc. 1-3 at 9–10).

Plaintiff L.M.W. also brings the following claim against the DCS Defendants on behalf of himself and L.W.: § 1983 claim for violation of procedural and substantive due process rights, arising generally out of (1) the DCS Defendants' conduct surrounding L.W.'s dependency proceeding and (2) the DCS Defendants' alleged failure to conduct follow-up investigations on L.W.'s disclosures of abuse, respectively. (*Id.* at 12–14).

Plaintiff L.M.W. also brings the following claim against the State Defendants and Tyus Defendants on his own behalf: a claim for loss of consortium with L.W. (*Id.* at 11–12). Plaintiffs have previously acknowledged that the loss of consortium claim is derivative of (1) L.W.'s gross negligence claim against the State of Arizona and the DCS Defendants and (2) L.W.'s willful and wanton conduct/negligence claim against the Tyus Defendants. (*Id.* at 11).

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable

1  to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-

2  movant to establish the existence of material fact. *Id.*

3       A material fact is any factual issue that may affect the outcome of the case under

4  the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5  The non-movant "must do more than simply show that there is some metaphysical doubt

6  as to the material facts" by "com[ing] forward with 'specific facts showing that there is a

7  genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

8  586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the

9  evidence is such that a reasonable jury could return a verdict for the non-moving party.

10  *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are

11  insufficient to create a material issue of fact and defeat a motion for summary judgment.

12  *Id.* at 247–48. However, in the summary judgment context, the Court construes all disputed

13  facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d

14  1072, 1075 (9th Cir. 2004).

15       At the summary judgment stage, the Court's role is to determine whether there is a

16  genuine issue available for trial. There is no issue for trial unless there is sufficient evidence

17  in favor of the non-moving party for a jury to return a verdict for the non-moving party.

18  *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not

19  significantly probative, summary judgment may be granted." *Id.* (citations omitted).

20  ### III.   STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

21       The State Defendants argue that they are entitled to summary judgment on each of

22  Plaintiffs' remaining claims against them. The Court notes that Plaintiffs' and the State

23  Defendants' arguments characterize Plaintiffs' claims differently from each other, and

24  sometimes in a manner that is not consistent with the Complaint. (*Compare* Doc. 175, and

25  Doc. 181, *with* Doc. 115-1). To ensure that the Court's discussion of the State Defendants'

26  motion remains consistent with the claims at issue, the Court has organized Plaintiffs' and

27  the State Defendants' arguments in a manner most consistent with the Complaint.

28

1

**A. Facts**

2   The following facts are either undisputed or recounted in the light most favorable to

3   the non-moving party. Any fact asserted by one party but left unaddressed by the other

4   party will be considered undisputed for the purposes of the motion. *See* Fed. R. Civ. P.

5   56(e)(2).

6   On November 30, 2020, Mr. Perry, a DCS employee, filed an application and

7   declaration with juvenile court for the ex parte removal of L.W. from his father L.M.W.'s

8   custody, citing various reasons (including criminal activity and drug use) why neither of

9   L.W.'s parents was fit to maintain custody of L.W. (Doc. 181-2). Plaintiffs allege that Mr.

10  Perry, with the help of another DCS employee Ms. McDonald, made false statements about

11  L.W.'s paternal grandmother in his report. (Doc. 181 at 15). Namely, Plaintiffs allege that

12  Mr. Perry's statement that "Paternal Grandmother had 'a history of helping [Plaintiff

13  L.M.W.] break the terms of his past probation,'" was false. (*Id.*; *see also* Doc. 181-3 at 3).[3]

14  In her deposition, L.W.'s paternal grandmother stated that she has not helped her son break

15  the terms of his probation. (Doc. 181-7 at 2). Mr. Perry testified in his deposition that he

16  based his statement about the paternal grandmother on statements made by L.W.'s

17  mother's probation officer, who in turn learned of the information from a coworker. (Doc.

18  181-6 at 6–9). Mr. Perry also stated that he knew that L.W.'s paternal grandmother had

19  served as a placement for L.W. twice before, that he attempted to call L.W.'s paternal

20  grandmother twice before filing the application, and that notes from previous placements

21  stated that when L.W. was previously placed with his paternal grandmother, the

22  grandmother was "hard to contact and hard to coordinate with." (*Id.*).

23  DCS filed its dependency petition with the juvenile court on December 9, 2020.

24  (Doc. 181-3). The following individuals were present at a team decision making ("TDM")

25
26
27
28

[3] The Court notes that its interpretation of the quoted material from Doc. 181-3 differs from Plaintiffs'. The full sentence from the declaration reads as follows (with names redacted and replaced with the initials/name Plaintiffs use): "L.W.'s only support is his mother, who has a history helping Father break the terms of his past probation." On its face, the language contemplates wrongdoings by L.W.'s mother, not grandmother. The Court next notes, however, that in the paternal grandmother's deposition, the same quote is redacted, but "L.W." is replaced with "L.M.W.," creating a discrepancy in the record. For the purposes of this motion, the court resolves the discrepancy in Plaintiffs' favor.

meeting dated December 11, 2020: L.W.'s mother, L.W.'s paternal grandmother, Mr. Perry, Ms. McDonald, and a TDM facilitator. (Doc. 181-4 at 6). The notes from the TDM meeting state that L.W.'s paternal grandmother "indicate[d] that L.W. is safe with her and Father['s] care but cannot verify what is occurring in [mother's] home." (*Id.* at 3). The notes further state that paternal grandmother "indicates that she has never seen drug issues and does not know what [marijuana] was found in L.W.'s hair." (*Id.*).

On December 14, 2020, Mr. Perry and Ms. McDonald filed a report to the juvenile court, which repeated concerns about L.W.'s paternal grandmother's fitness to serve as a placement for L.W. (Doc. 181-5 at 6). Specifically, the report indicated that paternal grandmother was identified and considered, but that paternal grandmother did not think the parents' criminal activity or L.W. showing up to school with marijuana in his hair were safety threats. (*Id.*). The report further states that paternal grandmother refused to provide her son's location. (*Id.*). L.W.'s paternal grandmother has since stated in her deposition that at the time, she told DCS the street name of where her son lived, but did not know the house number at the time she was asked. (Doc. 181-7 at 4).

On December 17, 2020, L.W. was removed from his father's custody and placed with the Tyus Defendants. (Doc. 175 at 11). On December 18, 2020, Plaintiff L.M.W. asked DCS to consider L.W.'s paternal aunt and uncle for placement. (Doc. 175-1 at 92). On December 30, 2020, L.W.'s paternal uncle met with Ms. McDonald. (Doc. 175-1 at 75). In that meeting, paternal uncle expressed interest in being a kinship placement for L.W., and Ms. McDonald explained requirements for being considered, including that aunt and uncle would need to undergo a background check. (*Id.* at 76). Paternal aunt did not provide her social security number (and other personal information for the background check) until at least January 15, 2021. (*Id.* at 77–79). L.W. was placed with his paternal aunt and uncle pursuant to juvenile court order on January 27, 2021. (*Id.* at 4).

**B. Gross Negligence Claim Against the State Defendants by L.W.**

As stated above, L.W.'s negligence claim against the State Defendants is based upon three apparent factual scenarios: (1) placing L.W. in a foster home in which Plaintiffs allege

the State Defendants had reason to know that L.W. would be abused, (2) failing to place L.W. with his paternal grandmother[4] in the first place and/or failure to identify and evaluate L.W.'s paternal aunt and uncle as foster parents, and (3) failing to timely investigate L.W.'s disclosures of abuse.

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson*, 150 P.3d at 230 (citation omitted). "A gross-negligence claim additionally requires a showing of '[g]ross, willful or wanton conduct.'" *Noriega v. Town of Miami*, 407 P.3d 92, 98 (Ariz. 2017) (citations omitted).

### i.   L.W.'s Placement with the Tyuses

Regarding the first set of allegations, the State Defendants argue that Plaintiffs "have not produced any evidence that the State Defendants had any reason to believe that either foster child 'S.C.' or the Tyuses' grandson 'L.J.' would physically and/or sexually abuse L.W. while he was in the Tyuses' home," or that the Tyuses would fail to supervise L.W. in a manner that would lead to such abuse. (Doc. 175 at 6).

Under Arizona law, tort duties arise in part out of public policy, "based on [the] state and federal statutes and the common law," when a plaintiff is within the class of persons intended to be protected by the statute and the harm to the plaintiff that occurred is the harm the statute sought to protect against. *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 829 (Ariz. 2018). In *Lorenz v. State*, the Arizona Court of Appeals explained that the purpose of the various Arizona statutes governing DCS and the manner in which DCS places dependent children with foster care is to protect children. 364 P.3d 475, 477. The State Defendants thus owed a duty to L.W. to place L.W. in "the least restrictive type of

---

[4] The Court acknowledges the State Defendants' argument that Plaintiffs should be prohibited from defeating summary judgment based on their theory related to L.W.'s paternal grandmother because Plaintiffs did not assert this theory in their Complaint and discovery did not make this theory of liability clear. (Doc. 183 at 3). For thoroughness and because consideration of Plaintiffs' arguments related to L.W.'s paternal grandmother did not impact the outcome, the Court analyzes the additional argument.

placement available, consistent with the best interests of [L.W.]." A.R.S. § 8-514(B).[5]

Plaintiffs appear to conflate their arguments regarding placement with the Tyuses with their arguments regarding the State Defendants' conduct in identifying, notifying, and/or evaluating family members for placement. The Court did not identify any evidence or arguments from Plaintiffs' response that contradicted or even concerned the State Defendants' arguments that they had no reason to know of any particular dangers the Tyuses' home posed. Moreover, Plaintiffs present no evidence of any breach of the State Defendants' duty besides their alleged failures related to placement with relatives. Because of this, the Court finds that the State Defendants, in placing L.W. in the Tyuses' home, did not breach their duty under this particular theory of liability. Thus, the Court grants the State Defendants' motion on L.W.'s claim of negligence with regard to L.W.'s placement with the Tyuses.

### ii.  Failure to Identify and Evaluate Familial Foster Options

Regarding the second factual basis for L.W.'s claim of negligence—failure to place L.W. with his paternal grandmother and/or identify and evaluate L.W.'s paternal aunt and uncle—the State Defendants argue that (1) the negligence claim is precluded by Arizona law, (2) the evidence does not support a negligence claim, (3) Plaintiffs failed to identify which individual defendants allegedly breached a duty, and (4) any failure to evaluate L.W.'s aunt and uncle was not a proximate cause of L.W.'s harm. (*Id.* at 9–14).

### 1.  Duty

Regarding duty, the State Defendants assert that the Arizona Court of Appeals has expressly held that the DCS policy manual "does not provide a basis for imposing public policy-based tort duties," and that Plaintiffs' own expert "readily admits in her report that her opinion regarding the State Defendants' duty and breach are predicated solely upon

---

[5] See Section III.B.ii, *infra*, for a more in-depth discussion of other particular duties the applicable statutes impose. For the purposes of the placement with the Tyuses, in general, the Court focuses on whether the State Defendants had any reason to know that the Tyuses' home posed particular risks to L.W. (and whether there is evidence of any other failure to evaluate safety), not whether there were relatives available. The particular theory of liability that the State Defendants failed to evaluate and/or place L.W. with relatives is discussed in the following section.

1   DCS internal policies." (*Id.* at 10).

2         Plaintiffs argue that "the primary source of the public-policy-based tort duties

3   underlying L.W.'s negligence claim is the Arizona state statutes and regulations governing

4   child placements, not the DCS policies that parrot the language of those statutes and

5   regulations." (Doc. 181 at 4). Plaintiffs cite various Arizona statutes that Plaintiffs assert

6   match the standards in DCS policies to which Plaintiffs' expert cites in her reports. (*Id.* at

7   5–6). Plaintiffs further argue that L.W. is within the class of persons designed to be

8   protected because the primary purpose of DCS is to protect children. (*Id.* at 6). Therefore,

9   Plaintiffs argue, the State Defendants owed a duty to place L.W. in "the least restrictive

10  type of placement available, consistent with L.W.'s best interests, with preference given to

11  placement with a grandparent or an aunt or uncle over placement in licensed family foster

12  care." (*Id.*).[6]

13        The Court is not persuaded that the Arizona statues to which Plaintiffs cite create

14  the particular duty that Plaintiffs propound with regard to evaluating (and ultimately

15  placing L.W. with) L.W.'s paternal aunt and uncle and/or paternal grandmother. Indeed, as

16  briefly discussed above, each of the relevant statutes "makes clear that the intent is to

17  protect dependent children, *not the interests of potential foster or adoptive placements*."

18  *Lorenz*, 364 P.3d at 477 (emphasis added). The court in *Lorenz* discussed various Arizona

19  statutes that concern placement with kinship (including those to which Plaintiffs cite) and

20  concluded that none of the statutes indicate an intent by the legislature to benefit the

21  interests of anyone but the dependent child. *Id.* at 477–78. Therefore, the Court concludes

22  that the State Defendants owed no duty to *place* L.W. with any particular relative. *See id.*

23  at 478 ("We have previously held that A.R.S. 8-514(B) [listing the order for placement

24  preferences] delineates preferences, not mandates. . . . More fundamentally, the statute

25  expresses a legislative intent to protect 'the needs of the child,' not the identified

26  _____

27  [6] Plaintiffs appear to argue that the State Defendants' duty to protect dependent children
    extends to impose a duty that the State Defendants ultimately place a dependent child with
    specific relatives, so long as those relatives are "available." For reasons outlined below,
    the Court believes this argument impermissibly expands the State Defendants' duty by in
28  essence creating a duty to place dependent children with available relatives, a duty not
    supported by relevant statutes and caselaw.

1    placements.") (citation omitted).

2         The Court agrees with Plaintiffs to the limited extent that that, with the needs of

3    L.W. as the focus, the State Defendants indeed owed a duty to "use due diligence in an

4    initial search to identify and notify adult relatives of the child . . . within thirty days after

5    the child is taken into temporary custody." A.R.S. § 8-514.07(A). Additionally, Arizona

6    law requires the State Defendants to "file with the [juvenile] court documentation regarding

7    attempts made pursuant to this section . . . to identify and notify adult relatives of the child."

8    *Id.* § 8-514.07(C). As such, based specifically on these particular duties,[7] the Court

9    continues its discussion to the question of breach.

10                            **2.  Breach**

11        Regarding breach, the State Defendants argue that the undisputed evidence in this

12   case shows that the State Defendants did not violate any DCS policies. (*Id.*). Specifically,

13   the State Defendants assert that Defendant McDonald (a DCS supervisor) "did in fact

14   identify and provide notice to L.W.'s aunt and uncle of the option to become a placement

15   resource for L.W.," in compliance with its own policy. (*Id.* at 11). Then, the State

16   Defendants point out, the paternal aunt and uncle did not provide all the information

17   necessary to evaluate them until nearly four weeks into L.W.'s stay with the Tyuses. (*Id.*

18   at 12–13). Therefore, the State Defendants argue, "there is simply no dispute that DCS

19   complied with the standard of care set forth by Plaintiffs' own disclosed liability expert

20   witness." (*Id.* at 13).

21        Plaintiffs argue that "there is substantial evidence from which the factfinder could

22   conclude the State, Mr. Perry, and Ms. McDonald breached their duty" imposed by

23   applicable statutes. (Doc. 181 at 6). Specifically, Plaintiffs argue that Mr. Perry knew that

24   (1) L.W.'s paternal grandmother was previously considered the least restrictive placement,

25   and (2) L.W.'s mother expressed that she wanted L.W. placed with the paternal

26   grandmother. (*Id.* at 7–8). Plaintiffs further argue that the rationale on which the State

27   Defendants chose not to place L.W. with his paternal grandmother was not supported by

28   _____

[7] The Court reiterates that it discusses the State Defendants' general duty to protect the
child in Section III.B.i.

1    the facts because the paternal grandmother has testified that "she had never seen drug issues
2    and did not know about the marijuana that was supposedly found in L.W.'s hair." (*Id.* at
3    8).

4         The Court agrees with the State Defendants that the evidence, even taken in the light
5    most favorable to Plaintiffs, does not establish a breach of the duties applicable to this
6    particular theory of liability. Regarding L.W.'s paternal aunt and uncle, the undisputed
7    evidence establishes that the State Defendants identified and notified paternal aunt and
8    uncle of the possibility of L.W.'s placement with them. The only cause that has been
9    identified for the delay in fully evaluating them as a placement was paternal aunt's belated
10   disclosure of her personal information. Similarly, the undisputed evidence indicates that
11   L.W.'s paternal grandmother was involved in the proceeding well within the required
12   thirty-day window. The evidence indicates that DCS considered both potential familial
13   placements and ultimately did place L.W. with his paternal aunt and uncle once they
14   provided the necessary information, as was proper. Thus, the State Defendants did not
15   breach even the limited duties that they owed, and L.W.'s negligence claim fails.[8] For
16   thoroughness, however, the Court briefly addresses the remaining arguments below.

### 3.  Identification of Defendants

18        Regarding (3), the State Defendants argue that Plaintiffs' expert's reports merely
19   state that DCS had breached its duty, but never "identify any of the individually named
20   defendants as having breached his or her standard of care, or how those individually named
21   defendants allegedly breached it." (*Id.* at 14). Thus, the State Defendants argue, at a
22   minimum the individual defendants are entitled to summary judgment on this claim. (*Id.*).
23   The Court declines to address this argument in detail here because it is unnecessary to the
24   resolution of the negligence claim.

25   //

---

26   [8] At oral argument, Plaintiffs' counsel cited to a page from Plaintiffs' expert's report in
27   which the expert stated that "DCS admits to not following 10 working day timeline" for
     performing a background check and setting up an interview with paternal aunt and uncle.
     (Doc. 175-1 at 26). This does not change the outcome, however, because the undisputed
28   evidence shows that the background check was not completed within the 10-day timeline
     because paternal aunt did not provide her personal information within that timeline.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

#### 4.  Causation

Regarding causation, the State Defendants argue that "Plaintiffs have not presented any evidence to establish that a child placed in a non-familial foster home is at a significantly increased risk for abuse," and that there was no reason for the State Defendants to know the Tyuses' home posed any such alleged risk. (*Id.* at 15). Moreover, the State Defendants argue, "[i]f an intervening event supersedes the defendant's liability, then the element of proximate cause is lacking"; the State Defendants assert that the actions of two entirely independent children are superseding causes of L.W.'s injuries. (Doc. 183 at 6). Therefore, the State Defendants argue, Plaintiffs have not established the necessary proximate cause to sustain a negligence claim against the State Defendants. (Doc. 175 at 16).

Plaintiffs argue that "there is sufficient evidence from which a jury could reasonably infer that the negligent conduct of [several of the State Defendants] contributed to L.W.'s damages and that those damages would not have occurred but for that conduct." (Doc. 181 at 11). Plaintiffs further argue that "regardless of whether—in the abstract—placement of a removed child in a non-familial foster home puts that child at greater risk of sexual abuse versus a child placed with an extended family member," there is no question that the placement was a but-for cause. (*Id.*).

In the context of this particular theory of liability, the Court focuses its inquiry on whether the State Defendants' failure to place L.W. with a relative was both an actual and proximate cause of L.W.'s injuries. The Court agrees with Plaintiffs that, although attenuated, factual causation arguably exists: the State Defendants placed L.W. with the Tyuses because they did *not* place him with a family member, and L.W. would not have suffered the *exact* harm he alleges he suffered but for his placement with the Tyuses.

However, the State Defendants are correct that Plaintiffs have not established proximate causation because, even taken in the light most favorable to Plaintiffs, the evidence establishes that the alleged conduct of the two children was a superseding cause of L.W.'s injuries. "A superseding cause, sufficient to become the proximate cause of the

final result and relieve [a] defendant of liability for his original negligence, arises only when an intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary." *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990) (citation omitted). Thus, contrary to Plaintiffs' arguments, whether the harm L.W. alleges he experienced was foreseeable to the State Defendants when they chose not to place L.W. with a family member is highly relevant. Plaintiffs have presented no evidence that the harms were foreseeable. Simply not placing L.W. with a family member does not render harm by the independent actions of other children in a foster home foreseeable, especially when no evidence has been presented that the State Defendants had reason to know of the potential for harm. The events that allegedly transpired can be described as extraordinary for the same reasons.[9] Thus, the Court concludes, Plaintiffs have failed to establish proximate causation, and thus L.W.'s claim fails for this additional reason.

### iii.  Failure to Investigate Abuse

Regarding Plaintiffs' allegations of failures to investigate L.W.'s disclosures of abuse, the State Defendants argue that there is no evidence of any reason for the State Defendants to know about abuse that allegedly occurred. (Doc. 175 at 6–7). Regarding the scratches L.M.W. alleges he found on L.W.'s back, the State Defendants argue that there was no indication from L.M.W. or L.W. that the scratches were attributable to anything other than L.W. "get[ting] itchy sometimes" until after L.W.  had already left the Tyuses' home. (*Id.*). As such, the State Defendants argue that they are entitled to summary judgment on this theory of the negligence claim because the undisputed testimony on record establishes that the State Defendants had no reason to be on notice that L.W. was suffering abuse. (*Id.* at 7).

---

[9] The court in *Robertson* further explained that in some instances, the independent intentional and/or criminal activity can sometimes fall within the scope of risk when a "defendant's original conduct created or increased the risk of harm through the misconduct of another." 789 P.2d at 1048. However, the court clarified by way of example that to find proximate cause in these situations, the plaintiff must present evidence that specifically establishes that the independent actor's conduct was foreseeable to the defendant. *Id.* Plaintiffs have not done so here.

Plaintiffs present no evidence or arguments with regard to this particular theory of liability in their response to the State Defendants' motion for summary judgment. Because Plaintiffs do not produce any evidence or arguments to counter the State Defendants' evidence, summary judgment is appropriate on this theory of liability.

### iv.  Conclusion

In summary, the State Defendants are entitled to summary judgment on L.W.'s negligence claim with regard to each theory of liability for the following reasons. Regarding the State Defendants placing L.W. in the Tyuses' custody, Plaintiffs have presented no evidence to show that the State Defendants knew or should have known that the Tyuses' home posed a particular risk to L.W. when the State Defendants placed L.W. in the Tyuses' custody. Regarding the State Defendants' failure to identify and place L.W. with either his paternal grandmother or his paternal aunt and uncle, (1) the State Defendants owe no duty to place a child with a relative; (2) the State Defendants did not breach their limited duties regarding potential relative placements; and (3) the State Defendants' conduct involving potential relative placements was not a proximate cause of L.W.'s injuries. Regarding the State Defendants' alleged failure to investigate abuse, Plaintiffs fail to present any evidence or arguments contradicting those of the State Defendants. For these reasons, the Court grants summary judgment on the entirety of L.W.'s negligence claim against all State Defendants.

### C.  Section 1983 Claim Against the DCS Defendants by L.M.W. and L.W.

As recited above, Plaintiffs' complaint states that their § 1983 claim is based on the following factual allegations: (1) the DCS Defendants' conduct surrounding L.W.'s dependency proceeding, including allegedly making false statements, and alleged failures to evaluate better custody situations for L.W. (procedural due process violations), and (2) the DCS Defendants' alleged various failures while L.W. was in the Tyuses' custody, such as failing to conduct follow-up investigations on L.W.'s disclosures of abuse (substantive due process violation). Plaintiffs' arguments in their response focus only on the following particular claim: violation of the right to be free from judicial deception, when Mr. Perry

1    and Ms. McDonald allegedly made false statements about L.W.'s paternal grandmother,

2    causing him not to be placed with her. (*See* Doc. 181 at 13–14). The Court thus grants the

3    State Defendants' motion for summary judgment with respect to any other theory of

4    liability under § 1983 and narrows its discussion to judicial deception.

5          In their motion, the State Defendants argue that Plaintiffs have not produced any

6    evidence that any aspect of the DCS removing L.W. from his father's custody violated

7    Plaintiffs' due process rights. (Doc. 175 at 5). Indeed, the State Defendants assert,

8    Plaintiffs' "own liability expert admitted that the dependency proceeding for L.W. from

9    his parents' custody was proper." (*Id.* (emphasis omitted)). The State Defendants further

10   argue that a delay in locating or evaluating a foster child's family member for placement

11   does not violate the child's constitutional rights. (*Id.* at 8). Specifically, the State

12   Defendants argue that the Ninth Circuit Court of Appeals has held that "[a] child who has

13   been taken into the custody of the state does not have a fundamental constitutional right to

14   be placed in foster care with his relatives." (*Id.* at 9).

15         Plaintiffs first argue that the State Defendants have misread Plaintiffs' expert's

16   report because the expert report focused only on the negligence claim, not the § 1983 claim.

17   (Doc. 183 at 13). Plaintiffs also emphasize that the constitutional right they assert the State

18   Defendants violated is the right to be free from judicial deception and argue that the State

19   Defendants misapprehended this claim and thus failed to meet their burden of production

20   on summary judgment. (*Id.* at 14–15). Plaintiffs then focus their arguments on the actions

21   of two DCS employees, Mr. Perry and Ms. McDonald, arguing that the two participated in

22   making "multiple material misrepresentations about Paternal Grandmother to the juvenile

23   court in L.W.'s 2020 dependency case." (*Id.* at 15). Plaintiffs go on to list the

24   misrepresentations they allege led to L.W.'s placement in a home other than that of his

25   paternal grandmother. (*Id.* at 15–17).

26         The Court first notes that although not argued with particularity, the State

27   Defendants indeed make arguments relevant even to the claim of judicial deception that

28   Plaintiffs clarified in their response. Namely, the State Defendants' motion argued that

Plaintiffs have not identified a constitutional right (of either L.M.W.'s or L.W.'s) that was violated because of the alleged deception. The State Defendants clarify this argument in their reply. Thus, the Court will evaluate the parties' arguments on the merits of the § 1983 claim.

The parties have propounded legal standards under which the Court should analyze Plaintiffs' judicial deception claim that differ in a crucial way. Plaintiffs argue that freedom from judicial deception is itself a constitutional right, violated by deception that impacts any judicial decision; the State Defendants argue that in addition, the impacted judicial decision must implicate a clearly established constitutional right. Upon examining *Benavidez v. Cnty. of San Diego*, the case to which Plaintiffs cite, the Court concludes that *Benavidez* concerns parents' right to be free from judicial deception specifically in the proceedings in which a child is *removed* from their custody. 993 F.3d 1134, 1146 (9th Cir. 2021). Put differently, parents have a right to be free from judicial deception in the evidence that is brought to juvenile court that leads the court to determine that the parents should lose custody (or to deprive parents of some other constitutional right). This reading of *Benavidez* is further bolstered in light of a case to which *Benavidez* cites. *See Costanich v. Dep't of Soc. And Health Servs.*, 627 F.3d 1101, 1115 ("[D]eliberately falsifying information during civil investigations *which result in the deprivation of protected liberty or property interests* may subject [defendants] to § 1983 liability.") (emphasis added).

The Court concludes that Plaintiffs have failed to produce any evidence that the State Defendants violated any of L.M.W.'s constitutional rights. Indeed, Plaintiffs make no argument that judicial deception impacted any aspect of the removal of L.W. from his father's custody; they merely argue that allegedly false statements affected where L.W. was placed after he was removed. Plaintiffs cite no authority that stands for the proposition that L.M.W. had a constitutional right to dictate the specific placement of L.W.; therefore, any statement the DCS employees made that impacted simply *where* L.W. was placed does not give rise to a cognizable § 1983 claim. Similarly, Plaintiffs have not produced any evidence that the State Defendants violated any of L.W.'s constitutional rights. Indeed, the

Ninth Circuit Court of Appeals has stated that "[t]he existence of a negative right to freedom from governmental interference, however, does not dictate the recognition of an affirmative right on the part of foster children to be placed by the state with relatives." *Lipscomb by and Through DeFehr v. Simmons*, 962 F.2d 1374, 1378–79 (9th Cir. 1992).

Because Plaintiffs have failed to show that any alleged judicial deception violated a constitutional right of L.M.W. or L.W., the State Defendants are entitled to summary judgment on Plaintiffs' § 1983 claims.[10]

### D. Loss of Consortium Claim by L.M.W.

The State Defendants finally argue that because the Court should grant summary judgment on the above claims, and because the loss of consortium claim is a derivative claim to the negligence claim, this Court should also grant summary judgment on the loss of consortium claim. (Doc. 175 at 16). As the Court indeed granted the State Defendants' motion on L.W.'s negligence claim, the Court also grants the State Defendants' motion with regard to Plaintiff L.M.W.'s loss of consortium claim against the State Defendants.

## IV.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST THE STATE DEFENDANTS

Because the Court has granted summary judgment in the State Defendants' favor, Plaintiffs' motion for summary judgment on the affirmative defenses is denied as moot.

## V.   CONCLUSION

Generally, when all federal claims have been resolved before trial, and only state law claims remain to be tried, this Court should decline to exercise supplemental jurisdiction. *Avelar v. Youth and Family Enrichment Servs.*, 364 F. App'x 358, 359 (9th Cir. 2010) ("We have frequently recognized that when federal claims are dismissed before trial, supplemental state claims should ordinarily also be dismissed. *See Jones v. Cmty.*

---

[10] The Court additionally notes that in *Costanich*, the Ninth Circuit Court of Appeals performed a qualified immunity analysis—the court in that case determined that a constitutional right had been violated, but that the right was not clearly established. 627 F.3d at 1109–16. Although unnecessary because the Court here determined that no rights were violated, the Court notes that in the alternative, qualified immunity applies to merit summary judgment in the DCS Defendants' favor as to Plaintiffs' claims. If any right was violated, the Court's analysis above demonstrates that any right possibly violated was not clearly established when the conduct at issue in this case occurred. *See id* at 1116.

*Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 651 (9th Cir. 1984); *Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ('When the state issues apparently predominate and all federal claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state claim.'); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966)."); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) ("By granting summary judgment to Ralphs and Cypress Creek on Oliver's ADA claim, the district court properly disposed of 'all claims over which it ha[d] original jurisdiction.' 28 U.S.C. § 1367(c)(3). Because the balance of the factors of 'judicial economy, convenience, fairness, and comity' did not 'tip in favor of retaining the state-law claims' after the dismissal of the ADA claim, [citations omitted], the district court did not abuse its discretion in dismissing Oliver's state law claims without prejudice.").

In this case, all claims except the state law claim against Mr. and Mrs. Tyus, will be disposed of after this Order. Because this case was removed, the Court is prepared to remand this claim to state court (with the motion for summary judgment still pending). However, the Ninth Circuit Court of Appeals has instructed that the Court should allow the parties to be heard prior to remanding. *See Ho v. Russi,* 45 F.4th 1083, 1087 (9th Cir. 2022). Therefore, the Court will allow each party to file a supplemental brief regarding remand within the time specified below.

Because this Order does not resolve all claims against all parties, the Court will not enter judgment at this time. *See* Fed. R. Civ. P. 54(b). And, in the event of remand, a partial judgment to permit an appeal may not be necessary. *See Harmston v. City & Cnty. of San Francisco,* 627 F.3d 1273, 1279 (9th Cir. 2010) (permitting an appeal of the remand order and finding that ". . . because the remand order disassociated the district court from the case entirely, and surrendered the district court's jurisdiction to a state court, it should be considered final for purposes of allowing a party to appeal prior non-final federal court orders") (cleaned up); *see also Doe v. Compania Panamena de Aviacion,* No. CV-21-2536-PSGPLAX, 2021 WL 6102479, at *2 (C.D. Cal. Oct. 4, 2021) (finding that "the Ninth Circuit held in *Harmston v. City & County of San Francisco* that a non-appealable

component of a case becomes a final appealable order when the remaining components are remanded to state court after a district court declines to exercise its supplemental jurisdiction.").  In the event the Court decides to remand the claim against Mr. and Mrs. Tyus pending settlement, and if, in that event either Plaintiff or the State Defendants seeks a partial judgment based on this Order pursuant to Federal Rule of Civil Procedure 54(b) (which may not be necessary under *Harmston*), such party shall file a supplement regarding entry of partial judgment within the time specified below.  Any such supplement must apply the Ninth Circuit test for when a partial judgment is appropriate.  *See, e.g., Gomez v. EOS CCA,* No. CV-18-2740-PHX-JAT (DMF), 2020 WL 4673167, at *1 (D. Ariz. Aug. 12, 2020).  Even if not required, entry of judgment may be preferable under Federal Rule of Civil Procedure 58(a) for collateral orders. *Harmston,* 627 F.3d at 1280 (discussing the deadline to appeal).

For the foregoing reasons,

**IT IS ORDERED** that the State Defendants' Motion for Summary Judgment, (Doc. 175), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (Doc 176), is **DENIED** as moot.

**IT IS FURTHER ORDERED** that in light of the potential settlement, the Tyus Defendants' Motion for Summary Judgment, (Doc. 162), remains pending.

**IT IS FURTHER ORDERED** that any supplement regarding remand, as specified above, is due within 14 days of this Order.

**IT IS FINALLY ORDERED** that any supplement regarding entry of judgment pursuant to Rule 54(b) is due within 14 days of this Order.

Dated this 9th day of August, 2024.

James A. Teilborg
Senior United States District Judge

- 19 -